**Eulis SAUNDERS, Jr., Appellant,**

**v.**

**DISTRICT OF COLUMBIA, Appellee.**

**No. 4758.**

District of Columbia Court of Appeals.

Argued June 23, 1969.

Decided March 13, 1970.

Henry Lincoln Johnson, Jr., Washington, D. C., for appellant.

Lewis D. Clarke, Asst. Corp. Counsel, with whom Charles T. Duncan, Corp. Counsel, Hubert B. Pair, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before HOOD, Chief Judge, KERN and GALLAGHER, Associate Judges.

KERN, Associate Judge:

This appeal is from a judgment by the Juvenile Court in a paternity proceeding

ordering appellant to pay $20 per month for support of a child born out of wedlock to the complainant after a jury had found him to be the father of that child. Only one contention by appellant requires discussion.

Appellant argues that the trial court erred at the preliminary hearing[1] and again during the trial in refusing to order turned over to him for impeachment purposes a writing made by the Assistant Corporation Counsel during his examination of the complainant prior to the filing of the complaint and information. The applicable statute, D.C.Code 1967, § 16–2344 provides:

> An unmarried woman * * * who has been delivered of a child born out of wedlock * * * may appear before the Corporation Counsel * * * or his assistant at the Juvenile Court and accuse a man of being the father of her child * * *. *The complainant shall be examined under oath by the * * * assistant to determine the validity of the accusation.* If, upon examination, there appears reasonable cause to believe that the accused person is the father of the child in question, the complaint shall be reduced to writing, verified by the complainant, and filed with the clerk of the court. The verified complaint may be introduced in evidence to impeach the complaining witness in any subsequent proceedings therein. (Emphasis added.)

The trial judge, after examining the writing, stated that it was *"not a written statement or signed declaration,* but a series of stylized questions * * * to which there are answers in some instances

and not answers in other instances." (Emphasis added.) Later, the court described the document as "merely some notes that the attorney [the Assistant Corporation Counsel] took down from what she said" and advised appellant's trial counsel that "this document would [not] * * * assist you in this trial at this time."

■ A Juvenile Court judge does not have plenary power to order the production of documents in the possession of one of the parties before him. *Cf.* In re Ketcham, D.C.App. (No. 2716 Original, decided June 26, 1964, and No. 2773 Original, decided July 29, 1964). Authorization for such an order must be found in a rule of court, statute, or constitutional requirement. The rules of procedure of the Juvenile Court, promulgated under authority of D.C.Code 1967, § 11–1526, do not provide for a production order. Likewise, D.C. Code 1967, § 16–2344, set out above, requires the Corporation Counsel to file a written complaint verified by the complainant and directs that *such complaint* be made available for impeachment purposes, but does not require disclosure of the initial examination of the complainant conducted by the Corporation Counsel.[2] However, the *Jencks* Act, 18 U.S.C. § 3500 (1964), providing that in a "criminal prosecution brought by the United States"[3] prior "statements" in the Government's possession by any witness for the Government must be delivered to the defendant, has been held to apply in non-criminal proceedings such as administrative hearings where the fundamentals of due process and fair play must be followed. Communist Party of United States v. Subversive Activities Control Bd., 102 U.S.App.D.C. 395,

1. A preliminary hearing is called for by D.C.Code 1967, § 16–2345; it is then determined if probable cause exists for prosecuting the complaint. District of Columbia v. Mock, D.C.App., 217 A.2d 113 (1966).

2. The only statutory requirement is that the complainant be examined *under oath*

by an Assistant Corporation Counsel with which we have held there must be strict compliance. Kelly v. District of Columbia, D.C.Mun.App., 139 A.2d 512 (1958).

3. The Act applies to prosecutions brought by the District of Columbia. Duncan v. United States, 126 U.S.App.D.C. 371, 373, 379 F.2d 148, 150 (1967).

408, 254 F.2d 314, 327 (1958).[4] *See also* Harvey Aluminum (Inc.) v. NLRB, 335 F.2d 749 (9th Cir.1964); NLRB v. Adhesive Products Corp., 258 F.2d 403 (2d Cir. 1958.

Paternity proceedings in this jurisdiction are neither entirely criminal nor civil in nature, but are quasi-criminal.[5] District of Columbia v. Turner, D.C.Mun. App., 154 A.2d 925 (1959). There, we said (at 926):

> * * * finding the defendant to be the father of the child can have a consequence definitely of criminal overtone. * * * [W]hen a question has been presented which is peculiar not to the child but to defendant alone—such as withdrawing a "plea of guilty"—reference has been made and should be made to the criminal law. (Footnote omitted.)

We conclude that a paternity proceeding brought in the name of the District of Columbia against a putative father is governed by the requirements of due process and is subject to the principle of the Jencks Act. Therefore, prior statements of government witnesses in possession of the government must be turned over to the defendant at trial.

However, the term "statement" in the Jencks Act is defined as:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement.

18 U.S.C. § 3500(e) (1)–(2) (1964). When this case was argued before us the record did not contain the writing in question. The evidence then in the record negated the application of subsection (1) above, but did not indicate whether subsection (2) was applicable. Pursuant to our Rule 31,[6] we sua sponte issued an order directing the trial judge to inform us, *inter alia*, whether the document in question

> contain[ed] "a substantially verbatim recital of an oral statement" made by complainant to the Assistant Corporation Counsel and "recorded contemporaneously with the making of such oral statement"?

We referred specifically to Williams v. United States, 119 U.S.App.D.C. 177, 338 F.2d 286, 5 A.L.R.3d 746 (1964), to provide guidance in determining whether the statement was "substantially verbatim."

The trial judge transmitted a letter to this court in which he stated that his answers to our questions were based upon his "recollection and belief without referral to said document", which he had examined at trial some 19 months before. In answer to our first question set forth above, the judge responded in the affirmative, that

4. The Court of Appeals stated:
> If this were a civil action in a court, or if it were a criminal case, the Party would be entitled to the production of these reports. The question here is whether production is one of the fundamentals of fair play required in an administrative proceeding. We think it is. (Footnote omitted.)

5. Paternity proceedings are *prosecuted* upon an information in the name of the District of Columbia by the Corporation Counsel, D.C.Code 1967, § 16–2342; a warrant for the arrest of an accused may

be issued by the Juvenile Court, D.C.Code 1967, § 16–2345; a money bond guaranteeing a defendant's appearance may be required by the court in default of which he may be committed, D.C.Code 1967, § 16–2346; and, if a defendant after having been found to be the father of the child and ordered to support it, fails to make such payments the court may order him committed to jail, D.C.Code 1967, § 16–2350.

6. Presently appearing as Rule 30 in the new rules of this court, in effect Feb. 2, 1970.

the document did contain a substantially "verbatim recital" of oral statements by the complainant which were recorded "contemporaneously". He further stated, in answer to another of this court's questions, that there were statements in the document "substantially inconsistent" with some of her testimony at the preliminary hearing and trial.[7]

In view of the fact that the trial court's answers to our questions appeared to contradict the position it took at the time of trial with respect to the writing, we ordered it produced for us under seal as a supplement to the record on appeal. *See* Dennis v. United States, 346 F.2d 10, 20 (10th Cir. 1965), rev'd on other grounds, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). The document consists of three legal-sized pages entitled "Interview and Trial Information". There are on each of the pages a number of printed headings, in check-list fashion, with blank spaces next to them in many of which are handwritten words or phrases. As an example, we list below a few of the entries which appear on page two:

First Met Defendant—*Oct 1964*

Where—*Football Game, D.C.*

First date Defendant—*April, 1965 (1 wk. after Easter)*

Freq. & circumstances of dates of contacts thereafter—*1 or 2 t/wk*

First relations—*June, 1965*

Frequency of relations—*1 ev. 2/wks*

■ One of the purposes of the Jencks Act was to prevent a defendant from using statements to impeach a witness "which could not fairly be said to be the witness' own". Palermo v. United States, 360 U.S. 343, 350, 79 S.Ct. 1217, 1223, 3 L.Ed.2d 1287 (1959). The Supreme Court further

stated in *Palermo* (at 352–353, 79 S.Ct. at 1225):

> [S]ummaries of an oral statement which evidence substantial selection of material, or which were prepared after the interview without the aid of complete notes, and hence rest on the memory of the agent, are not to be produced. Neither, of course, are statements which contain the agent's interpretations or impressions.

In Williams v. United States, *supra*, the United States Court of Appeals set forth some guidelines for determining whether a witness' statement recorded by a government agent falls within the reach of the Jencks Act (119 U.S.App.D.C. at 179–180, 338 F.2d at 288–289):

(1) the extent to which it conforms to the language of the witness;

(2) its length in comparison with the length of the interview;

(3) the lapse of time between the interview and its transcription;

(4) the appearance of the substance of the witness' remarks;

(5) the use of quotation marks; and

(6) the presence of the comments or ideas of the interviewer.

■ At trial, the government characterized this writing as a "trial preparation sheet" that did not contain the words of the complaining witness but "the impressions of the attorney as he gets answers." However, it has been recognized that even a prosecutor's notes constitute a "statement" within Jencks if such notes "are substantially a verbatim recitation of the witness' testimony." Saunders v. United States, 114 U.S.App.D.C. 345, 349, 316 F.2d 346, 350 (1963), appeal after remand 116 U.S.App.D.C. 326, 323 F.2d 628, cert. denied, 377 U.S. 935, 84 S.Ct. 1339, 12 L.Ed.2d

---

7. At oral argument before this court government counsel indicated that a material discrepancy may have existed between what was in the writing and complainant's testimony at trial.

299 (1964). Since the trial court expressly rejected the argument that the Jencks Act was applicable in a paternity proceeding, we cannot accept its conclusion during trial that the document was "not a written statement" as dispositive of the issue whether this was a "statement" within the meaning of Jencks. Likewise, we are reluctant to accept its later conclusion that the writing was a "statement" under Jencks in view of the facts that it did not have the document in question before it and the government was not given an opportunity to present the Assistant Corporation Counsel who examined the complainant.

We think that the case must be remanded to the trial court for a determination whether the writing in question was a statement within the meaning of the Jencks Act and, if so, whether the failure to produce was prejudicial to appellant.[8] The trial court should not only examine the writing but should also hold a hearing at which inquiry may be made of the government attorney who interviewed complainant and complainant herself. Williams v. United States, 117 U.S.App.D.C. 206, 209, 328 F.2d 178, 181 (1963). If the trial court determines that the writing was a statement and it was prejudicial to appellant not to have it at trial the trial court should vacate the judgment and grant appellant a new trial. Otherwise, the trial court should supplement the record with new findings of fact and enter a new final judgment so that the right to appellate review on an enlarged record will have been preserved. *See* Campbell v. United States, 365 U.S. 85, 99, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961); Williams v. United States, 117 U.S.App.D.C. at 209, 328 F.2d at 181.

Reversed and remanded for further proceedings consistent with this opinion.

---

8. We note that the complainant was quite firm in her testimony that she last had intercourse with appellant on August 14, 1965, and thereafter became pregnant. In the document in question beside the entry "Last Menstrual Period Prior to Pregnancy]" appears 8/15/65 in ink and 7/29–8/2/65 in pencil. Appellant denied at trial that he was the father of complainant's child and suggested in his defense that someone else was guilty.